ANDREJWSKI *v.* WOLVERINE COAL CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION — DEATH — CONSTRUCTION OF STATUTE.

   Act No. 10, Extra Session 1912, providing compensation for injuries to employees, or for their death in the course of their employment (2 How. Stat. [2d Ed.] § 3939 *et seq.*), is in derogation of the common law and should be strictly construed, although it is a remedial statute and creates a right against one who would not otherwise be liable.

2. SAME—AMOUNT OF COMPENSATION.

   Where a servant has worked in his employment for practically the whole year preceding his injury, his average annual earnings are known or ascertainable and the average weekly wages are to be determined by finding one fifty-second of the annual earnings.

3. SAME—TERM OF EMPLOYMENT.

   If the workman has not been employed during substantially the entire year, but his daily wage or salary is fixed, or known, his average earnings as a basis of compensation will be 300 times the daily wage or salary. In case his employment has been limited in term, or there is insufficient data from which to determine his annual earnings, they are to be determined by taking 300 times his daily wage or salary, or the daily wage of similar workmen in like employment.

4. SAME—IRREGULAR EMPLOYMENT.

   Decedent worked in a coal mine in the Saginaw valley. The employment was not continuous, but operations were carried on for an average of 211 days in a year. Payment was fixed by contract on the basis of the number of tons produced, and the amount that each miner received depended on the coal which was sent up on his number. During the year which preceded the death of deceased, the mine in which he was employed was operated 148 days, and he received $507.45. While the mine was not in operation, he worked as a cement block layer for another employer, earning nearly the same amount of wages. *Held*, that the first three classes mentioned under section 11 of the compensation act were intended to include workmen

who were employed during substantially the whole year prior to the accident, and that it would not be reasonable or fair to apply such methods of compensation to the case of deceased, and that the average annual earnings should be computed on the basis of the average for the preceding eight years, as provided by the fourth classification under this section of the law.

Certiorari to the industrial accident board. Submitted November 5, 1913. (Docket No. 40.) Decided October 2, 1914. Rehearing denied January 29, 1915.

Anna Andrejwski presented her claim for compensation for the death of her husband, Joseph Andrejwski, against the Wolverine Coal Company. From the order entered awarding compensation, contestant brings certiorari. Reduced and judgment entered.

*George M. Humphrey (Humphrey, Grant & Humphrey,* of counsel), for appellant.

*Coumans & Gaffney,* for appellee.

McALVAY, C. J. This case is brought to this court by the appellant upon a writ of certiorari to review the decision and order of the industrial accident board in affirming an award theretofore made in said cause by the arbitration committee therein. There appears to be but little dispute upon the material facts in the case.

Joseph Andrejwski, deceased, was claimant's husband, employed by appellant in its mine No. 2. On November 18, 1912, in the course of his employment, he came to his death by an accident, which occurred without fault of either party. At this time both the employer and employed had voluntarily made their election to come under and be governed by the employers' liability and workmen's compensation act, being Act No. 10 of the Public Acts of Michigan, Extra Session 1912. (2 How. Stat. [2d Ed.] § 3939 *et seq.*) Claimant is the sole dependent of deceased

entitled to such compensation as may be granted under said act. Deceased had worked as a miner continuously in this mine for ten years before this accident, during all of the time the mine was being worked. This is a coal mine operated by appellant, and is located near Bay City in the Saginaw valley district. This is the principal coal mining district in this State, and includes the operation, under similar conditions, of a number of companies and mines. The mine in question and the other mines in this district do not run continuously during the entire year; some entirely suspend operations for several months during the summer, and others do not operate during a portion of each month, in a measure caused by the fact that operations are controlled by the sales of the product, which depend entirely upon orders. Operations also depend upon weather conditions.

The record shows that no mine in the district runs or has ever run 300 days in the year. It also appears from the operations of these mines for the years 1909 to 1912, inclusive, that the coal mining industry in this district has been carried on on the average for only 211 days in each year.

The miners are paid on contract by the ton and work on numbers. The amount paid depends on the amount each miner sends up on his number. Two or three miners may work together and send up the coal on the number of one of them. The price paid miners is regulated by what is called a "scale" made between the operators and the union, and one of the things always taken into consideration in fixing the wages of miners in this district is that the mine does not run steadily and the miner can only work when it does run.

For the year immediately preceding deceased's death, mine No. 2, in question, was operated 148 days. On his number coal was sent up 131 days, for which

he received a total of $507.45. During the time when the mine was idle in this year, deceased was working outside of this employment for another employer as a cement block layer and earned $487.14.

It is conceded that compensation is due and payable to the appellee as sole dependent of deceased, and it is also conceded that such compensation is to be paid weekly for the period of 300 weeks.

The sole question presented for determination is the amount of the weekly compensation to be paid. The case, therefore, involves the construction of section 11 of part 2 of Act No. 10, heretofore mentioned, which deals exclusively with the matter of "compensation." This section reads as follows:

"SEC. 11. The term 'average weekly wages' as used in this act is defined to be one fifty-second part of the average annual earnings of the employee. If the injured employee has not worked in the employment in which he was working at the time of the accident, whether for the employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he has earned in such employment during the days when so employed. If the injured employee has not worked in such employment during substantially the whole of such immediately preceding year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed. In cases where the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such annual earnings shall be taken at such sum as, having regard to the previous earnings of the injured employee, and of other employees of the same or most similar class, working in the same or most similar employment, in the same or neighboring locality, shall reasonably represent the

annual earning capacity of the injured employee at the time of the accident in the employment in which he was working at such time."

The construction of this section of the statute is for the first time before this court, and our statute, although similar in many respects to other statutes of like import in England and some of the United States, differs quite materially from all of them as to the rules provided for determining the amount of compensation to be paid those entitled thereto under it.

It will therefore be proper to give consideration at the outset to the conditions giving rise to the necessity for such legislation, and also the objects sought to be accomplished and the radical changes brought about by its enactment. Such legislation has undoubtedly been brought about by present industrial conditions which have for years continued to take increased toll from the numbers of those employed, on account of the increased hazards connected with manufacturing, transportation, and kindred industries.

Heretofore if an employee has been injured or killed in any employment in which he was engaged, he, or those representing him or dependent upon him, could recover for such injury or death only when the same could be attributed to the negligence of the employer. Experience has shown that such conditions were unsatisfactory, and results arising from such litigation often worked great injustice to one or both parties. From these conditions has been evolved legislation of this character upon the theory that the industry which occasioned such injuries should, as a part of the cost of production, bear the burden by compensation for the same.

The act in question, like all similar acts, provides for compensation, and not for damages, and in its consideration and construction all of the rules of law and procedure, which apply to recover damages for

negligently causing injury or death, are in these cases no longer applicable, and there is substituted a new code of procedure fixed and determined by the act in question. This legislation, then, is a new departure and creates a new liability, resting upon one class in favor of another, without reference to any negligent conduct of the class upon which the burden is cast. In other words, this legislation is wholly in derogation of the common law. It is legislation which awards compensation for the accidental industrial injuries to be added to the cost of production.

This statute, being in derogation of the common law, should be strictly construed, and that fundamental principle must be applied, although it is remedial and provides a remedy against a person who otherwise would not be liable. This act is entitled:

"An act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employees, providing compensation for the accidental injury to or death of employees and methods for the payment of the same, establishing an industrial accident board, defining its powers, etc."

This entitling would indicate that this legislation was justified on the ground that it is a proper exercise of the police power of the State. In its construction we enter a new field, to consider only the question of compensation, and to turn absolutely away from the idea of damages.

The compensation provided for is based upon average weekly wages of the injured or deceased party, 50 per cent. of which is to be paid weekly to him or his dependents, for various periods of time, according to the nature of the injury or the length of the disability. The average weekly wages of the employee must always be determined by dividing his average annual earnings by 52.

By section 11 of part 2 of this act the legislature

specifically provided the manner in which the average annual earnings of each employee should be determined by making four classifications, under one of which every case to be considered and determined under this statute must fall. Attention will now be given to these classifications, quoting and construing them in the order in which they appear in this section:

*First.* "The term 'average weekly wages' as used in this act is defined to be one fifty-second part of the average annual earnings of the employee."

While this sentence is in fact a definition, it is also a classification. There is practically no disagreement between the attorneys for the parties upon this matter. It is admitted that, where an employee has worked in the employment in which he was injured for practically the whole year immediately preceding his injury, his average annual earnings are fixed and known, and to determine by this definition his average weekly wages requires but a simple mathematical computation. That this was the legislative intent clearly appears from the initial clauses of the second and third classifications which immediately follow, both of which treat cases where the injured employee has not so worked.

*Second.* "If the injured employee has not worked in the employment in which he was working at the time of the accident, whether for the employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he has earned in such employment during the days when so employed."

This class is intended to include those cases where an employee who has not worked in the employment in which he was engaged at the time of his injury, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, where his daily wage or salary earned

is fixed and known. In such case his average annual earnings will be 300 times such average daily wage or salary earned in such employment during the days when so employed.

*Third.* "If the injured employee has not worked in such employment during substantially the whole of such immediately preceding year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed."

This class is also intended to include those cases where an employee has not worked in the employment in which he was engaged at the time of his injury during substantially the whole of such year immediately preceding; there being, by reason of the limited term of service, no data from which his average annual earnings can be determined. In such case such earnings shall consist of 300 times the average daily wage or salary which an employee of the same class, working substantially the whole of the preceding year, in the same or similar employment, in the same or a neighboring place, shall have earned in such employment during the days when so employed.

*Fourth.* "In cases where the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such annual earnings shall be taken at such sum as, having regard to the previous earnings of the injured employee, and of other employees of the same or most similar class, working in the same or most similar employment, in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee at the time of the accident in the employment in which he was working at such time."

182. Mich.—20.

This classification includes all cases—

"*Where the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied.*"

This is the sole test fixed by the legislature to determine whether or not a case comes within this class.

The question in the instant case for the court, upon the facts presented by this record, is to determine under the provisions of which of the four classifications of this statute the average annual earnings of this employee must be ascertained. It is clear that the first, second, and third classes of cases relate to employments which continue during substantially the entire calendar year. About the first there is no question. The same initial language used in the second and third classifications indicates that the legislature still had in mind employments at which employees worked substantially the whole of the year immediately preceding an injury. The employment in which the injured employee in the instant case was engaged at the time of his injury was not an employment of that character. It was not an employment in an industry which continued operations during substantially the entire year. The record shows that this is the case, not only in the Saginaw valley district, but everywhere in the coal mining industry. It also shows that the miners were paid according to the number of tons of coal mined by them, and that, under the system of operations, the miners worked on numbers; that frequently two or more miners get out coal and send it up to the surface upon one number; that the man to whom the number belonged would receive the pay for the entire output, and the miners would divide it among themselves. It also appears that the coal mines in the Saginaw valley district worked on an average of 211 days in each year. How will it be possible, in fixing the average annual wages

of deceased, to adapt these facts to the rules established by the legislature in classes 1, 2 or 3?

In our opinion the "methods of arriving at the average annual earnings of the injured employee" set forth in these classes "cannot reasonably and fairly be applied." We must therefore conclude that it comes within the fourth classification, where such average annual earnings must be determined to be such sum as, *"having regard to the previous earnings of the injured employee,* and of other employees of the same or most similar class, working in the same or most similar employment, in the same or neighboring locality, shall reasonably represent *the annual earning capacity* of the injured employee at the time of the accident *in the employment in which he was working at such time."* Applying this rule to the undisputed facts in the instant case, we find that he was paid by his employer, in this employment in which he was engaged during the time the mine was operated the preceding year, the sum of $507.45; that the average time in which the coal mining industry operated in that district was 211 days. It is clear, from the manner in which the men worked on numbers in this employment, that the above sum but approximately represents his entire earnings. The terms of this fourth classification indicate that the amount of compensation in the cases which come within it can only be approximated. We have already intimated that the legislative intent in enacting this legislation was to place the burden of compensation for losses caused by industrial injuries and deaths upon the several industries as part of the cost of production, in this manner to be borne by the public generally.

The foregoing consideration of these four classifications shows that the term "average annual earnings" of the injured employee, as used in this act, means his average annual earnings in the employment

in which he was engaged at the time of his injury. This appears so clearly and emphatically that it is impossible to arrive at any other conclusion and preserve what appears to have been the legislative intent to exclude other earnings in different or concurrent employments, and thus be able to distribute the burden of compensation to each of the several industries wherein the injuries and deaths may occur.

In making these classifications which we have been considering, the known and recognized incidents of industrial employments were taken into consideration. The first three relate to employments wherein operations are carried on for substantially the entire year, and may be said to include the large majority of industrial employments in the State. That there were well-known industrial employments within this jurisdiction which were not so operated must also have been within the knowledge of the legislative body. That such employments were recognized and provided for is apparent from the terms and provisions of the fourth classification. If this conclusion is not correct, we must hold that the legislature has omitted a large class of employees from the benefits of this statute. Such a construction will never be given, where another and a reasonable construction can be adopted.

Act No. 10, under consideration, both by its title and by the provisions which it contains, indicates that it was general legislation intended to apply to all employees and all industrial employments within this State, and to provide compensation to all such employees for accidental injuries or deaths resulting therefrom. It is apparent, then, that the legislation was intended to make such provision, and that section 11 of part 2 of this act was intended to apply to all cases of accidental injuries or deaths occurring in such employments.

In our opinion the legislature by this statute did in fact make provision which applied to all cases of such injuries and deaths occurring in all employments, and that, in making such provision, they included the known and recognized incident of the employment of coal mining and other employments that such employments were not carried on during the entire year. Therefore, in determining the compensation to employees injured in such employments and in arriving at a fair and reasonable basis therefor, the computation must be made under the provisions of the fourth classification of this statute, and the amount of the average annual earnings of the injured employee ascertained as near as possible.

To charge this employment with compensation for injuries to its employees on the same basis as employments which operate during substantially 300 days in the year would be an apparent injustice, as such compensation would be based on the theory of impossible earnings by the employee in that employment which operated upon the average a trifle over two-thirds of a working year. This was recognized and provided for by the legislature by omitting from the fourth classification any requirement relative to the average daily wage or salary of an injured employee. This construction, in principle, appears to be supported by the English cases involving questions of like character. *Kelly* v. *Spinning Co., Ltd.,* 43 Ir. L. T. J. 81; *Bailey* v. *Kenworthy,* 98 L. T. 333, 334; *Carter* v. *John Lang & Sons,* 16 Sc. L. T. 345-348; *Anslow* v. *Colliery Co.,* 100 L. T. 786.

In the record is an exhibit showing the annual earnings paid by appellant to the deceased from 1904 to 1912, inclusive, amounting to $5,175.21. From this table we find that the average annual earnings paid to him during that period were $575.02, which we will take as a basis for the computation of the com-

pensation to which the claimant is entitled. Having determined his average annual earnings, there remains nothing further to do, except to determine the average weekly wages, by dividing this sum by 52, the result of which is $11.06, as such average weekly wages. One-half of this amount, being $5.53, would be the amount to be paid weekly to the claimant for a term not exceeding 300 weeks.

The conclusion of law, therefore, of the industrial accident board, in determining that the average weekly wages of deceased should be computed under the second classification of section 11 of part 2 of this act, was erroneous. Its order in affirming the award made in this cause by the arbitration committee therein is therefore reversed and set aside; and this court, in cases under this act brought to this court for review, being authorized by section 12 of part 3 of said act "to make such orders in respect thereto as justice may require," does order and determine that said order of the industrial accident board be reversed and set aside, and an order entered by said board in said cause in accordance with the foregoing opinion, but without costs.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.