## THOMAS CUTTY

*vs.*

## WILLIAM M. CARSON,

CLERK OF THE CIRCUIT COURT OF BALTIMORE CITY.

*Osteopathy: practice; regulation of—; Chapter 786 of the Acts of 1914.*

Chapter 786 of the Acts of 1914 prohibits the practice of osteopathy by any except graduates of institutes having a corporate character and affording designated courses of study; and requires that all practioners of osteopathy should be registered by the clerk of the circuit court of the county or city where their practice is being conducted.   pp. 28-30

The requirement of registration applies to those who were in practice before the Act was passed, as well as to those who qualify *after* the law became effective.   p. 31

Those who, before the statute, were not practioners of osteopathy are required to be examined by the State Board, and to obtain the board's license, before they are entitled to registration as such practitioners.   p. 30

But, under the Act, one who, before its passage, was a graduate of an incorporated college of osteopathy, and a practitioner of that school, in order to be entitled to register, need not procure a license from the State Board.   pp. 31, 32

Where a statute, in one section, expressly limits the scope of its application, the whole statute should be so construed, although other sections contain language that would ordinarily be of a wider scope.   p. 33

The real intent of a statute, when ascertained, will always prevail over the literal sense of its language.   p. 33

26        CUTTY *vs.* CARSON.

The law requires that an applicant for registration (who has been a practitioner before the passage of the Act) should make affidavit that he had been granted a diploma by a reputable incorporated college, etc.; such a practitioner was refused the right to register, on the ground that he had no license from the State Board; in a petition against the clerk to compel him duly to register, etc., the petition averred that the petitioner was such a graduate, etc., and that he offered to make the affidavit required by the Act, and tendered the proper fee, but was denied the opportunity:. *Held,* that the allegations were sufficient to call for an answer as to the facts, and that a demurrer to the petition was not sustainable.        p. 35

The averments in the petition were not open to the objection of being mere conclusions of law.        pp. 35, 36

*Decided January 13th, 1915.*

Appeal from the Superior Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ. case.

*John Holt Richardson,* for the appellant.

*Lawrence J. McCormick* (with a brief by *Wells & McCormick*), for the appellee

URNER, J., delivered the opinion of the Court.

The petition filed by the appellant in the Court below recites that the Act of 1914, Chapter 786, providing for a

State Board of Osteopathic Examiners and for the examining, licensing and registration of osteopaths in this State, includes a provision that nothing in the statute should be construed to affect the right to practice osteopathy on the part of any person who was engaged in such practice in Maryland at the time of the approval of the Act and to whom there had been granted a diploma from a legally incorporated and reputable college of osteopathy, but that such a person appearing before the Clerk of the Circuit Court of the county in which he or she was practicing, or before the Clerk of the Circuit Court of Baltimore City, and making affidavit to that effect, and upon the payment of a fee of one dollar, should be registered. It was then alleged that the petitioner, being in the practice of osteopathy in this State at the time of the approval of the Act of 1914, and having so practiced for more than two years, and enjoying a large, successful and lucrative practice, and being a graduate of, and having a diploma from the Maryland College of Osteopathy, a body corporate under the laws of Maryland, duly authorized by its charter to issue such diploma, made application to the Clerk of the Circuit Court of Baltimore City to be registered under section 9 of the Act of 1914, and tendered himself ready and willing to make the affidavit and pay the fee required by that section, but the clerk refused to let the petitioner make the affidavit or to register him as provided by law. The prayer of the petition is that the writ of mandamus may issue directing the clerk to duly register the petitioner as an osteopath upon his making the affidavit and paying the fee specified in section 9 of the Act.

A demurrer to the petition was filed by the defendant, and upon this there was a joinder of issue. The Court below sustained the demurrer and dismissed the petition. From the order thus disposing of the case the petitioner has appealed.

The question we are to decide involves the construction of Chapter 786 of the Acts of 1914, codified as sections 290 and

303, inclusive, of Article 43, of the Annotated Code, in so far as the provisions of the statute are concerned with the rights of osteopaths in the situation of the appellant.

The first six sections of the Act deal with the appiontment, qualifications, tenure, powers, duties and compensation of the Board of Osteopathic Examiners. Then follows, in section 296, a provision that any person who was engaged in the practice of osteopathy in this State at the time of the approval of the Act might deliver to the secretary of the Board of Examiners, on or before June 15, 1914, a written application for license to practice osteopathy, together with satisfactory proof that the applicant is not less than twenty-one years of age, is of good moral character, and has obtained a diploma from some legally incorporated reputable osteopathic college, requiring a course of study and personal attendance of at least four terms of five months each for graduation, and that upon payment of a fee of ten dollars the secretary of the board should issue to the applicant a license to practice osteopathy in this State.

Section 297 provides that from and after the approval of the Act (which occurred on April 13, 1914), any person not theretofore authorized to practice osteopathy in Maryland, and desiring to enter upon such practice, may deliver to the secretary of the Board of Examiners, upon the payment of a fee of twenty-five dollars, a written application for examination, together with satisfactory proof that the applicant is more than twenty-one years of age, is of good moral character, has obtained a preliminary education as later described in the Act, and has received a diploma conferring the degree of doctor of osteopathy from some legally incorporated reputable osteopathic college, wherein the course of instruction consists of at least three separate years of not less than nine months in each year. There are additional provisions in section 297 covering the educational requirements in cases of applicants who receive their degrees after January 1, 1917, and those who were graduate practitioners

of osteopathy in other States of April 13, 1914. In the same section the subjects and standard of the examinations are prescribed, and it is directed that the board shall issue to each applicant who shall pass the examination and be adjudged duly qualified a license to practice osteopathy as provided in a later section.

In section 298, which is the same as section 9 of the statute as enacted, there is a definition of the term "reputable" as previously applied in the Act to schools and colleges of osteopathy from which applicants are required to have diplomas. The section then provides: "that nothing in this sub-title (Act) shall be construed to affect the right to practice osteopathy, on the part of any person who is in the practice of osteopathy within this State on April 13, 1914, and who has had granted unto him or her a diploma from any legally incorporated and reputable college of osteopathy. Such a person appearing before the clerk of the county in which he or she is practicing, or clerk of the Circuit Court of Baltimore City, and making affidavit to that effect, and upon the payment of a fee of one dollar shall be registered."

Section 299 regulates the issuance of licenses in Maryland to applicants who have been examined and licensed in other States, and contains a provision that: "Any person receiving a license from said board shall file the same at once with the clerk of the Circuit Court of the county in which he or she may reside, or with the clerk of the Circuit Court of Baltimore City, if said person shall reside therein, and it shall be the duty of said clerk to register the name of said person and of the president of the board signing said license in a book kept for the purpose, as a part of the records of his office." In case of the permanent removal of the licensee to another part of the State, the license, or a certified copy, is required to be filed at once with the clerk of the Circuit Court of the county or city to which the practitioner shall have removed. A fee of fifty cents is directed to be paid for such registration of licenses.

Osteopathy is defined in section 300, which also declares it to be a misdemeanor, punishable as specified, for any person unlawfully to procure himself to be registered as an osteopath "either by false and untrue statement contained in his or her application to the clerk of the Court, as required by this sub-title, or by presenting to said clerk a false or untrue license, or one fraudulently obtained by false and fraudulent statements made to said Board of Osteopathic Examiners."

By section 301 osteopaths are made subject to all State and municipal regulations relating to the control of contagious diseases.

Section 302 provides that: "From and after April 13, 1914, no person shall enter upon or continue the practice of Osteopathy in the State of Maryland unless he or she has complied with the provisions of this sub-title, and shall have exhibited to the clerk of the Circuit Court of Baltimore City, or the clerk of the Circuit Court of the county in which he or she desires to practice osteopathy, a license duly granted to him or her, as hereinbefore provided, whereupon he or she shall be entitled, upon the payment of one dollar, to be duly registered in the office of the clerk of the Circuit Court of Baltimore City, or the clerk of the Circuit Court of the county; and any person who shall practice or attempt to practice osteopathy * * * without having first obtained the license herein provided for, or contrary to the provisions of this sub-title * * * shall be deemed guilty of a misdemeanor," and upon conviction be subject to stated penalties.

The final section, 303, directs the State Board to refuse or revoke licenses in cases where the applicant or licensee has been convicted of procuring, aiding or abetting a criminal abortion, and authorizes the board to refuse, revoke or suspend the right to practice osteopathy in this State for other specified reasons.

It is further provided that: "Any citizen of Maryland having information which causes him to believe that any

person has been heretofore wrongfully and improperly regis-
tered as osteopath, upon his application to the clerk of any
Court, may apply, by petition, to the Circuit Court of the
county wherein such registration was made, or to the Circuit
Court of Baltimore City, if such registration was in Balti-
more City, which petition shall be under oath, and shall state
that the petitioner is informed and believes that the person
named therein has been heretofore improperly and wrongfully
registered as osteopath upon his own application and affidavit
upon the register of osteopaths or book kept for such purpose
in any Court of this State, for the reason (as said petitioner
is *empowered*) that such person was not lawfully practicing
osteopathy in the State of Maryland as a duly qualified
osteopath in said State entitled to be registered as an oste-
opath upon his own application to the clerk of the said
Court." Provision is made for the trial and determination
of the charge thus preferred. The section makes it the duty
of the Police Commissioners of Baltimore City, and of the
sheriffs of the various counties, to see that all practicing
osteopaths in the State shall be duly registered according to
the requirements of the Act.

There are certain objects contemplated by the provisions to
which we have thus referred as to which there can be no
controversy. It is the evident purpose of the Act that all
practitioners of osteopathy in this State shall be registered.
The intent is clear also to prohibit the practice of osteopathy
except by graduates of institutions having the corporate char-
acter and affording the courses of study designated. These
requirements apply as well to those who were in practice
before the Act was passed as to those who have become qual-
ified since it has been operative. There is the further man-
ifest design that applicants who were not authorized to prac-
tice before the enactment of the statute must pass an exam-
ination and obtain a license from the State Board. It is
equally plain that graduate osteopaths who were engaged
in practice in Maryland prior to the approval of the Act

are not required to undergo an examination. But the question presented for our decision is whether such practitioners are subjected by the statute to the necessity of obtaining a *license* from the State Board of Examiners as a preliminary to their *registration* by the clerk of the Circuit Court of the county or city in which the practice is being conducted.

The petitioner states that he was a practicing osteopath in Baltimore before the Act became effective, and held a diploma as a graduate of the Maryland College of Osteopathy, incorporated, and had offered to make the prescribed affidavit, but he did not allege that he had obtained from the board, and proposed to file with the clerk a license for the practice of osteopathy. It is urged by the appellee that this was a prerequisite to the appellant's registration, and that as there was no averment of this essential fact, the demurrer to the petition was properly sustained.

The difficulty in the case arises from an apparent inconsistency between two of the provisions we have quoted. According to section 298, the right to practice osteopathy is not affected by the Act in the case of any person who was engaged in such practice before April 13, 1914, and who had received a diploma from an institution of the character described, but such a person may be registered upon making affidavit to the facts just stated and paying a fee of one dollar. But section 302 provides that from and after the date mentioned no person shall enter upon or continue the practice of osteopathy unless he shall have complied with the terms of the Act and exhibited to the clerk of the Circuit Court of the city or county in which he desires to practice a license duly granted him by the State Board. The contention is that section 302 applies not only to those who enter upon the practice of osteopathy after the passage of the statute, but also to those who were practicing in Maryland prior to this legislation and who desired to continue in the exercise of that privilege after the Act became effective.

The section would undoubtedly admit of this interpretation if we were at liberty to consider its meaning with exclusive reference to its own terms. Such a construction, however, is expressly forbidden by the declaration in section 298 that nothing in the Act shall be construed to affect "the right to practice osteopathy on the part of any person who is in the practice of osteopathy within this State on April 13, 1914," as to whom registration alone, under the conditions stated, is made essential. It becomes necessary, therefore, to interpret the language of section 302 in conformity with the principle which the statute itself has thus established. The provision that from and after April 13, 1914, no person shall enter upon or continue the practice of osteopathy without procuring both license and registration, must accordingly be understood as not applying to those who, as graduate practitioners at the time of the enactment, were specifically authorized to continue in the practice upon the sole condition of becoming registered after making the affidavit and payment indicated. The other classes mentioned in the Act are osteopaths who were non-resident practitioners at the time of its passage, and all who thereafter entered upon the practice in Maryland, and it is to these classes alone that the provision of section 302 in question must be held to apply. The words employed are susceptible of such an application, and we are required to thus limit and interpret their meaning in deference to the rule of construction which the Act itself has prescribed. It is a familiar principle in the interpretation of statutes that: "The real intent, when ascertained, will always prevail over the literal sense of the language, *State* v. *Milburn,* 9 Gill. 109; *Milburn* v. *State,* 1 Md. 17; because both the canons of verbal criticism and the rules of grammatical construction must alike yield to the manifest spirit and intent of the enactment. Or, as differently expressed, 'Sometimes cases not within the words are held to be within the Act, and other cases are by construction taken without the operation of the law, though covered by the lan-

guage, according to the intent and design of the Legislature,'
*Wilson* v. *State, use of Davis,* 21 Md. 1." *Roland Park Co.*
v. *State,* 80 Md. 451.

There are provisions of the Act, apart from the one we
have quoted from section 298, which were evidently framed
in pursuance of the legislative purpose that graduate osteo-
paths in practice before the approval of the statute should
not be subjected to the necessity of procuring a license from
the State Board, but should be authorized to continue their
practice upon obtaining registration by the clerk in the ap-
propriate jurisdiction.    In section 303, which deals in the
first instance with the refusal, revocation or suspension of
licenses by the Board, a separate and different procedure is
provided for cancelling the registration of those who have
been wrongfully and improperly registered as osteopaths
upon their *"own application and affidavit"* before the clerk.
There is no provision for such application and affidavit ex-
cept in the cases of osteopaths who were practicing in the
State prior to the Act.    Section 300, as already noted, pro-
hibits the unlawful procurement of registration either *by a
false statement in the application to the clerk,* or *by the pre-
sentation of a fradulent license.*    There are penalties im-
posed in section 302 upon any person convicted of practicing
osteopathy without having first obtained the license provided
for, *"or contrary to the provisions"* of the statute.    It is true
that those who were engaged in the practice of osteopathy
when the statute was enacted were permitted by section 296
to obtain a license from the State Board, on or before June
15, 1914, upon proving the specified facts as to age, char-
acter and training, and paying a fee of ten dollars, but this
is not made compulsory, and the only object of the provision
apparently was to give the prior practitioners the option of
securing a license with a view to simplifying the process of
registration in case of removal, it being provided in section
299 that if a licensee, after the recording of his license,
should permanently remove his residence to some other part

of the State he should merely file his license, and have it registered, at a cost of fifty cents, with the clerk of the county or city of his new abode, whereas one who, being in previous practice has simply procured registration, without obtaining a preliminary license, must, in the event of removal, make the affidavit and pay the fee of one dollar required by section 298.

But aside from the other supporting considerations to which we have thus alluded, we are of the opinion that the distinct and positive rule of construction which the statute declares must control our decision of the question we have discussed. Our conclusion therefore, is that it was not necessary for the petitioner in this case to allege or prove that he had procured a license from the State Board of Examiners as a prerequisite to his right to be registered.

The demurrer raises other objections to the sufficiency of the petition for mandamus. It is said to be defective in not alleging that the petitioner is a graduate of a "reputable" college within the statutory definition of that term. The petition, as already recited, avers that the petitioner is a graduate of the Maryland College of Osteopathy, incorporated, and as such holds a diploma which the college was duly authorized to issue, and that he offered to make the affidavit required by the section referred to, which would necessarily include a sworn statement that he had been graduated from such a college of osteopathy as the law defines and recognizes to be reputable. The making of such an affidavit and the payment of the fee of one dollar, which is alleged to have been also tendered, are the only conditions of registration under section 298, and the complaint here is that the appellant was denied an opportunity to comply with these requirements. In our view the allegations of the petition in this respect sufficiently state a case which calls for an answer as to the facts, and the demurrer was not sustainable on the ground just considered.

The objection that the averment of the offer to make the affidavit and pay the fee as required by section 298 is the

.statement of a mere conclusion of law must also be overruled. The affidavit required is that the applicant for registration was a practitioner when the Act went into effect and that he had been granted a diploma by a legally incorporated and reputable college of osteopathy, and the offer to make such an affidavit is alleged to have been refused. It is clear that the case as thus presented is not within the principle which the appellee invokes. An entirely different situation existed in *Harwood* v. *Marshall,* 10 Md. 451, which has been cited in this connection. In that case an alternative writ of mandamus averred that the plaintiff had taken the oaths of office prescribed by the Constitution and laws for the State Librarian, and the answer to the writ alleged that the oaths were not taken in manner and form as directed by the Constitution and laws of the State. This response was held to merely state a conclusion of law. The principle of that case evidently has no application to the one now under consideration.

As we are unable to concur in the ruling of the learned Judge below in sustaining the demurrer and dismissing the petition, it will be necessary to reverse the order appealed from and remand the case for further proceedings.

*Order reversed, with costs, and cause remanded.*