DOROTHY FLYNN, Respondent, v. HAROLD CARSON and PIERCE DUNNE, Employers, and HARTFORD ACCIDENT & INDEMNITY COMPANY, Surety, Appellants.

[243 Pac. 818.]

WORKMEN'S COMPENSATION LAW—OBJECT AND INTENT OF ACT—CONSTRUCTION OF ACT—CASUAL EMPLOYMENT—MEASURE OF COMPENSATION FOR INJURY—"AVERAGE WEEKLY WAGES"—INSUFFICIENT EVIDENCE—UNSUPPORTED FINDING OF INDUSTRIAL ACCIDENT BOARD—MOTION TO SUBMIT FURTHER TESTIMONY—DISCRETION OF BOARD—REMAND TO ASCERTAIN AVERAGE WEEKLY WAGES.

1. The words "casual employment," as used in C. S., sec. 6216, enumerating classes of employment which are exempted from the operation of the Workmen's Compensation Act, do not exclude the person but exclude the employment.

2. An employment which regularly recurs at periodic intervals, which is directly connected with the employer's business, is conducted under the express direction of the employer and subjects the employee to the hazards of the employer's business, is not a casual employment within the meaning of the Workmen's Compensation Act.

3. In construing the Workmen's Compensation Act, the cardinal rule is to ascertain the intention of the legislature as it is expressed in the words of the statute, and for this purpose the act must be considered as a whole.

4. The object of the Workmen's Compensation Act is to compensate for loss of capacity to earn, measured by what a workman of that class and grade could earn in the employment in which he was, under the conditions prevailing therein before and up to the time of the accident.

5. The reasonable intention of the Workmen's Compensation Act, as regards the amount of compensation to be arrived at, is directly indicated by the provisions of C. S., sec. 6237, as being the average weekly wages computed in such manner as best calculated to give the average weekly wages of the workman, based on the wages paid in the industry for the kind of service he was rendering.

6. The provision of C. S., sec. 6228, that if, at the time of the injury, the employee received "wages of less than $6 per week, then the compensation shall not exceed the full amount of such wages," contemplates weekly average wages in an industry wherein those wages, paid on a weekly basis, do not exceed $6, and does not refer to an employee working only on part time.

7. Where an employee of an autobus line is regularly engaged as driver of a bus for a single hour on Saturday nights only, at which time extra drivers are required, the measure of compensation for death during such employment is the average weekly wage for constant employment of the same grade, computed under the provisions of C. S., sec. 6237, and not the amount received as wages by such employee during the single hour per week of his actual employment.

8. The denial by the Industrial Accident Board of a motion to submit further testimony will not be deemed error where the record shows no abuse of discretion, and it appears that the motion and affidavits in connection therewith were fully considered by the board.

Publisher's Note.

1. See 28 R. C. L. 766.
3. See 25 R. C. L. 960.
4. See 28 R. C. L. 821.

See Workmen's Compensation Acts, C. J., sec. 34, p. 41, n. 98, 99; sec. 43, p. 51, n. 67; p. 52, n. 73; sec. 80, p. 89, n. 15 New; 17 New, 19; p. 90, n. 22, 23; sec. 114, p. 115, n. 37; sec. 129, p. 124, n. 61 New.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. Albert H. Featherstone, Judge.

Judgment affirming award of Industrial Accident Board in favor of claimant, from which defendants appeal. Judgment of district court *reversed,* and cause *remanded* for further proceedings.

Carlton Fox and Randall & Danskin, for Appellants.

Neither the statute nor the decision of this court thereon allows the Industrial Accident Board to refuse to consider either a proper application to adduce further testimony or affidavits in support thereof. (C. S., sec. 6286; *Taylor v. Blackwell Lumber Co.,* 37 Ida. 707, 218 Pac. 356.)

Only proof of the wages earned in the same grade of work in which the workman is engaged at the time of his injury is competent, and the wages at the time of his injury, which resulted in death, were less than $6 per week; the wages then received are the only ones which may be taken into consideration. (C. S., secs. 6223, 6228 and 6237.)

In no event is the evidence sufficient to show either what his or anyone else's average weekly wages were, or what other persons received in the same grade of work in the same class of employment in the same district. (C. S., sec. 6237; *In re Gorski,* 227 Mass. 456, 116 N. E. 811.)

The Idaho Workmen's Compensation Act excepts casual employment from its operation, just the same as it excepts farm labor, outworkers, members of the employer's family living in his home, and others, even though engaged in the regular course of the employer's trade or occupation. (C. S., secs. 6213, 6216, 6217, 6221.)

The word "casual," as used in the act, means "occurring at irregular intervals, occasional," and refers to the character of the employment and not to the nature of the work performed. (*Senter v. Tarbert,* Third Ann. Report of Industrial Accident Board of Idaho, p. 167; *Kowallis v. State Insurance Manager,* Idem, p. 171; Webster's New Internatl.

Dictionary; Standard Dictionary (1924); *In re Gaynor,* 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363; *In re Cheevers,* 219 Mass. 244, 106 N. E. 861; *Aurora Brewing Co. v. Industrial Board of Illinois,* 277 Ill. 142, 115 N. E. 207; *Chas. A. Smith & Co. v. Industrial Commission of Illinois,* 299 Ill. 377, 132 N. E. 470; *Diamond Livery v. Industrial Com.,* 289 Ill. 591, 124 N. E. 609; *Consumers' Mut. Oil Producing Co. v. Industrial Com.,* 289 Ill. 423, 124 N. E. 608; *Chicago Great Western R. R. v. Industrial Com.,* 284 Ill. 573, 120 N. E. 508; *Bridger v. Lincoln Feed & Fuel Co.,* 105 Neb. 222, 179 N. W. 1020; *Maryland Casualty Co. v. Pillsbury,* 172 Cal. 748, 158 Pac. 1031; *Blood v. Industrial Acc. Com.,* 30 Cal. App. 274, 157 Pac. 1140, 1141; *Thompson v. Twiss,* 90 Conn. 444, 97 Atl. 328, L. R. A. 1916E, 506; *Nebraska Nat. Guard v. Morgan,* 112 Neb. 432, 199 N. W. 557; *Herbig v. Walton Auto Co.,* 191 Iowa, 394, 182 N. W. 204.)

One of the reasons assigned why the legislature excepted casual employment from the operation of the act is that it is impractical to take such employments into consideration in covering compensation with insurance. (*Herbig v. Walton Auto Co., supra; Kaplan v. Gaskill,* 108 Neb. 455, 187 N. W. 943.)

The employment of Flynn was not periodically recurrent. The finding of Commissioner Worstell to this effect was overruled by the whole board on review, and such action is binding on the courts. (*In re Septimo,* 219 Mass. 430, 107 N. E. 63.)

James A. Wayne and Walter H. Hanson, for Respondent.

The ruling of the Industrial Accident Board denying appellant's motion to hear further evidence was proper, for the reason that such applications must be accompanied by showing of diligence, while the present application failed to show any diligence whatever. (*Tibbet v. Sue,* 125 Cal. 544, 58 Pac. 160.)

The application was one the granting or denial of which was discretionary with the board, and their decision upon

a matter calling for the exercise of their discretionary powers is only subject to review where the board has abused its discretion. (*Taylor v. Blackwell Lumber Co.*, 37 Ida. 707, 218 Pac. 356.)

The average weekly wages of a deceased employee need not be proved with absolute certainty by his dependents; it is sufficient if such wages be proved with reasonable probability. (*McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068; *Lumberman's Reciprocal Assn. v. Warner* (Tex. Civ. App.), 234 S. W. 545, 245 S. W. 664.)

An employment which necessarily occurs at periodic intervals, which is directly connected with the employer's business, is conducted under the express direction of the employer, and which subjects the employee to the hazards of the employer's business, is not a casual employment within the meaning of the Idaho Workmen's Compensation Act. (*Terry v. Utah-Idaho S. C.*, 2 Ida. I. A. B., p. 131; 6 Cyc. 701; *Lewis v. Lofley*, 92 Ga. 804, 19 S. E. 57; 11 C. J. 28; 1st Series Words & Phrases, vol. 2; *Tarr v. Hecla Coal & Coke Co.*, 265 Pa. 519, 109 Atl. 224; *Roe v. Bonham*, 99 N. J. L. 290, 123 Atl. 376; *McCall v. Bell T. Co.*, 79 Pa. Sup. Ct. 505; *McDonald v. Great Atlantic & Pac. Tea Co.*, 95 Conn. 160, 111 Atl. 65; *Smith v. Heine Safety Boiler Co.*, 119 Me. 552, 112 Atl. 516; *Mitchell's Case*, 121 Me. 455, 118 Atl. 287; *American Steel Foundries v. Industrial Board*, 284 Ill. 99, 119 N. E. 902; *Cinofsky v. Industrial Com.*, 290 Ill. 521, 125 N. E. 286; *Holeman Creamery Assn. v. Industrial Com.*, 167 Wis. 470, 167 N. W. 808; *Jordan v. Weinman*, 167 Wis. 474, 167 N. W. 810; *State v. District Court*, 141 Minn. 83, 169 N. W. 488; *Nebraska National Guard v. Morgan*, 112 Neb. 432, 199 N. W. 557; *Nosky v. Farmers' Union*, 109 Neb. 489, 191 N. W. 846; *Kaplin v. Gaskill*, 108 Neb. 455, 187 N. W. 943; *Industrial Com. v. Funk*, 68 Colo. 467, 191 Pac. 125; *Utah Copper Co. v. Industrial Com.*, 57 Utah, 118, 13 A. L. R. 1367, 193 Pac. 24; *Millard v. Industrial Com.*, 62 Utah, 46, 217 Pac. 974; *Eddington v. Northwestern B. T. Co.* (Iowa), 202 N. W. 374; *Roman Catholic Archbishop v. Industrial Com.*, 194 Cal. 660, 230 Pac. 1.)

42 Idaho—10

TAYLOR, J.—This is an appeal from a judgment of the district court of Shoshone county affirming an award made by the Industrial Accident Board in favor of plaintiff, on review of findings and award made by the board under the Workmen's Compensation Act. The appellants Carson and Dunne, as copartners, operated an autobus line between Mullan and Wallace, and the appellant Hartford Accident & Indemnity Company was the insurer of these employers. The deceased left a surviving widow, Dorothy Flynn, and there was born to her a posthumous daughter. Allowance was made upon a total dependency of Dorothy Flynn and child of the sum of $12 per week for a period of 400 weeks, with a proviso that should Dorothy Flynn marry or die during that period, the daughter should be entitled to 25 per cent of the average weekly earnings of deceased, the sum of $8.75 per week, until she should have attained the age of 18 years.

The appellants assign a number of errors which may be grouped under three heads: (1) That the employment of deceased was casual, and excepted from the provisions of the workmen's compensation law; (2) that the evidence was insufficient to sustain the finding of the board that the deceased's average wages were $35 per week, or anything in excess of $1 per week, and that the allowance of compensation on the basis of an average weekly wage of $35 was not supported by the evidence, and was contrary to law; and (3) that the board erred in refusing to permit the appellants to submit additional testimony of one Stevenson to impeach the evidence of Carson and Dunne.

The commissioner who first heard the case made findings that the deceased was in the employ of Carson and Dunne from December 16, 1923, and at all times up to and including February 2, 1924; that after he quit driving for Carson and Dunne as a regular driver, he was employed as a barber in the village of Mullan; and that he "had agreed with Carson and Dunne to drive as an extra driver from and after January 27, 1924, until the spring of the year."

The Industrial Accident Board modified these findings to the effect that "after the deceased quit driving for Carson and Dunne as a regular driver on January 27, 1924, he was employed as a barber in the village of Mullan, Idaho; and that he was available to Carson and Dunne to drive as an extra driver from and after January 27, 1924." The board also found "that it was a custom of the proprietors of this stage line to run one or more extra stages from Wallace to Mullan or from Mullan to Wallace on Saturday nights." On December 16, 1923, Carson and Dunne took over the business from a former proprietor. The deceased had been a driver formerly, and continued as a regular driver for Carson and Dunne to and including January 27, 1924, at which time he was discharged, and immediately thereafter took up employment as a barber in a shop in Mullan. From December 16th on, Carson and Dunne each drove, and kept two regular drivers and an extra driver. The evidence shows that at least one extra driver, and sometimes more, were customarily employed upon Saturday nights. A trip was from Mullan to Wallace and return. Regular drivers were paid $5 per day; extra drivers, $1 per round trip, or, if they drove extra trips in one day in excess of five, they were paid $5 per day.

On February 2d, one of the appellant employers went to the barber-shop where deceased was employed, and asked him to go to Wallace that evening and bring back one of the busses, which would be taken down by a mechanic of the appellant employers, an extra trip. The deceased was on his way from Mullan to Wallace on one of the busses of the appellant employers, preparatory to bringing back this other bus, when the one in which he was riding, and in which capacity he is conceded to have been an employee going to his work, left the road and he was instantly killed. Appellants contend that this was casual employment, and excepted from the act.

"Time has confirmed the wisdom of the conclusion, early arrived at by the English authorities, that no hard and fast

definition of the term 'casual' is advisable.'' (Honnold on Workmen's Compensation, vol. 1, p. 199, sec. 62.)

See, also, *Thompson v. Twiss,* 90 Conn. 444, 97 Atl. 328, L. R. A. 1916E, 506.

While the employers were not insured under the state insurance fund, we may presume that it is the policy of the law that insurance shall be carried in proportion to the pay-roll of the employer, in classes of employment. C. S., sec. 6301, providing for rates to be charged by the state insurance fund, requires that the department shall "fix the rates of premiums . . . . based upon the total pay-roll and number of employees" in each class of employment. C. S., sec. 6302, requires the department to keep "an account of the money received from each individual employer." C. S., sec. 6305, provides for an adjustment of the actual premium for a period in accordance with the actual expenditure of wages for such period. C. S., sec. 6310, requires every employer insured in the state fund to keep a true and accurate record of the number of his employees, and the wages paid by him, and furnish to the department upon demand a sworn statement of the same. C. S., sec. 6311, makes an employer who shall wilfully misrepresent the amount of the pay-roll upon which the premiums chargeable by the fund are to be based, liable to the state in ten times the amount of the difference between the premiums paid and the amount the employer should have paid had his "pay-roll been correctly computed." C. S., sec. 6312, makes one guilty of a misdemeanor who wilfully misrepresents any fact in order to obtain insurance in the state fund at less than the proper rate for such insurance.

The statutes of no two states are identical in their provisions as to casual employment, nor do any of them follow identically the British act. This has led to a varied array of authorities of construction, excluding and including employment as casual or not casual. One class of statutes provides that the employee is excluded whose employment is "casual" or "but casual" or "purely casual" "or" not in the usual course of trade or occupation, etc. Another pro-

vides that he is excluded only where the employment is "casual" "and" not in the usual course of trade or occupation, etc. Under the former, it is argued that the employee may be excluded in either event, and in the latter only when the two facts exist conjunctively. The latter, as the British rule, is well defined. Many state acts have been amended from a disjunctive "or" provision to a conjunctive "and," or *vice versa.*

The Massachusetts act construed in *Gaynor v. Standard Accident Ins. Co.,* 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363, excluded "one whose employment is but casual." That case said:

"The significance of this exception in our act is emphasized by its contrast with the provisions of the English act, which is different in a material respect. As is pointed out in *Hill v. Begg* (1908), 2 K. B. 802, at 805, its words descriptive of the workman are not one whose employment is but casual, but one 'whose employment is of a casual nature, and . . . . otherwise than for the purposes of the employer's trade or business.' This difference in phraseology cannot be treated as unintentional, but must be regarded as deliberately designed. . . . . Manifestly its effect is to narrow the scope of our act as compared with the English act. No one whose employment is 'casual' can recover here, while the one whose employment is 'of a casual nature' comes within the act, provided it is also for the purpose of the employer's trade or business. It is possible that a distinction as to the character of the employment may be founded upon the difference between the modifying word 'casual' used in our act, and the words 'of a casual nature' in the English act. The phrase of our act tends to indicate that the contract for service is the thing to be analyzed, in order to determine whether it be casual, while in the English act the nature of the service rendered is the decisive test."

We are inclined to agree with the Iowa court in *Eddington v. Northwestern Bell Telephone Co.* (Iowa), 202 N. W. 374, that—

"  . . . . The distinction made as to whether on the one hand the character of the employment shall be the test, or on the other that the character of the work be the test, is somewhat strained if not fanciful. . . . .

"The clear objective of the Compensation Act is to protect the employee against the hazards of the employer's trade or business. When the relation of employer and employee is established, and when the employee is subjected to the hazards of his employer's trade or business, and suffers injury therefrom while so engaged, in the due course of his employment, the excepting proviso of the statute ought not to be enlarged by difficult or doubtful construction so as to render such an injury noncompensable."

Little more is gained from the adjudicated cases than the summary of the federal court in *Western Union Tel. Co. v. Hickman*, 248 Fed. 899, 161 C. C. A. 17, that "If the hiring be incidental or occasional, for a limited and temporary purpose, though within the scope of the master's business, the employment is 'casual' and covered by the exception."

See, also, *Thompson v. Twiss, supra*.

Construing a statute since amended, but which excluded "any person whose employment is but casual or is not in the usual course of the trade," etc., the supreme court of Wisconsin said:

"Hence, an employment that is only occasional, or comes at uncertain times, or at irregular intervals, and whose happening cannot be reasonably anticipated as certain or likely to occur or to become necessary or desirable is but a casual employment within the meaning of the statute. It is one that arises occasionally or incidentally and is not a usual concomitant of the business, trade, or profession of the employer." (*Holmen Creamery Assn. v. Industrial Commission*, 167 Wis. 470, 167 N. W. 808.)

[1] Appellants in their brief confuse the statute when they say that the exclusion is of those "who are casually employed." The exclusion is of the "casual employment," not necessarily the casual "employee"; not those "persons" but those "employments" are necessarily excluded which are "casual." C. S., secs. 6213, 6216, 6217, 6221 and 6225,

may be paraphrased thus: If a workman receives personal injury by accident arising out of and in the course of any employment in a trade or occupation which is carried on by the employer for the sake of pecuniary gain, and such employment is not casual employment, his employer or the surety shall pay compensation. C. S., sec. 6216, does not exclude persons, but employments.

[2] We must not confuse the terms "extra driver" and "extra trips." This was a regular trip customarily made Saturday nights in addition to other regular trips, and reasonably to be anticipated, expected and counted upon. It surely cannot be contended that one who employs regular automobile drivers, and, with regularity and custom, employs an extra driver upon Saturday nights, would be excusable in not providing insurance for an extra driver who, according to the evidence, is contemplated to have been employed every Saturday night. The amount of money paid regularly each Saturday night to an extra driver, at least to one, where the evidence shows there was one or more, would not be left out of, or omitted from, the estimated pay-roll, or its omission excused on a plea that such employment was casual. Tested by the necessary rules of construction, the employment in this case was not merely incidental nor occasional, without regularity or for a limited and temporary purpose, but was a regular, recurring employment each Saturday night, which was customary and to be anticipated with such regularity, and with its hazard a part of the overhead of the industry, even though the individuals who might perform the work were not steadily engaged for the purpose. It "therefore belongs to the category of things to be expected and provided for." (*Holmen Creamery Assn. v. Industrial Commission, supra.*)

The board found "that the average weekly wages or earnings of the deceased during the year next preceding said injury (were) $35 per week." Appellants rightly contend that there is no proof that the deceased's average wages for the year preceding his death, or for any other period,

were $35 per week, but further contend that his earnings at the time of his injury and death were less than $6 per week, viz., $1, and that the compensation cannot exceed $1 per week.

The compensation act does not follow in detail any of the acts of other states or countries with relation to arriving at the average weekly wages or earnings of the employee. The courts of other jurisdictions have gone from the length of declaring such acts to be in derogation of the common law and to be strictly construed (*Andrejuski v. Wolverine Coal Co.*, 182 Mich. 298, Ann. Cas. 1916D, 724, 148 N. W. 684), to that of holding that such acts, being highly remedial in character, should generally be liberally and broadly construed to effectuate their beneficent purposes. (*State v. District Court*, 129 Minn. 176, 151 N. W. 912.) They should not, however, be given a "strained construction to include accidents not within their terms," or to give compensation not intended. **[3]** The cardinal rule is to ascertain the intention of the legislature as it is expressed in the words of the statute, and for this purpose the act must be considered as a whole. (*Mitchell v. State*, 115 Md. 360, 80 Atl. 1020.)

"The real intent, when ascertained, will always prevail over the literal sense of the language . . . ." (*Cutty v. Carson*, 125 Md. 25, 93 Atl. 302.)

"The purpose of the Legislature to recognize the duty of the public to reasonably compensate workmen in the employ of others, based upon mutuality of interest between employers, employees, and the public, should be considered in construing the Act. *Lesh v. Illinois Steel Co.*, 163 Wis. 124, 157 N. W. 539, L. R. A. 1916E, 105." (Honnold on Workmen's Compensation, vol. 1, p. 27, n. 35.)

In *McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068, this court said:

"The workmen's compensation law, like other laws of this state, is to be liberally construed with a view to effect its object and promote justice. . . . . This does not mean that the courts should endeavor by construction to extend its

provisions to persons not intended to be included by it, but that it shall be so construed as to carry out its purposes and, so far as is reasonably possible, secure its benefits to all those who were intended to receive them.''

[4] Compensation is based upon the loss of earning power, or capacity to earn. The object of this legislation, broadly stated, is to compensate for loss of capacity to earn, measured by what a workman of that class and grade could earn in the employment in which he was, under the conditions prevailing therein before and up to the time of the accident. (Honnold on Workmen's Compensation, vol. 1, p. 579, sec. 148.)

If it be argued that, on the theory that industry shall bear the burden of the loss incident to its operation, in this instance it has not been shown that the deceased devoted to this industry other than a brief hour of his time, nor could have expected so to devote other or more of his time, and that, therefore, in proportion to the wages which he could expect to earn or would have earned, compensation should be a mere dollar, which he would have earned upon this trip, the answer is that this industry made use of him, a person capable of earning that much in a brief space of time, in an employment which, on a weekly wage, might pay a maximum of $35, or at any rate $30, per week, on a steady six-day basis of $5 a day. It is no answer for the employer to say to the widow and infant child of the deceased, ''I used but an hour, a dollar's worth, of your decedent's time. He was free to devote all of his other time to other pursuits, and I will pay just $1 as a weekly earnings basis of compensation,'' for this employer took everything in the way of earning capacity that the deceased had and used it, and, due to the exigencies of fate and chance, it was destroyed in the use of the industry; and the theory of compensation is that that industry in which that earning capacity and provision for maintenance of the family were destroyed, shall bear the burden.

History and statistics of employments demonstrate that a reasonably certain percentage of injury and accident

may be fairly relied upon. We might assume that in this present industry, with almost mathematical certainty, a driver would be injured just so often, in proportion to the pay-roll and the number of hours of service. Then this family has borne that ratable proportion of the loss of the industry in the loss of the head of the family. If we could figure with exact nicety how long it might be between fatal accidents in this industry, in theory the Workmen's Compensation Act would require the industry in that length of time to lay by enough to compensate for the injury sure to occur. This worker has been the sacrifice to the maw of accident and chance, and it would be a narrow construction indeed of the intention of this act to say that he, capable and efficient in the performance of the duties of a position of which the reasonable average wage was $5 per day, should assimilate the percentage of hazard for the whole period, and his family be compensated by $1 per week, because by chance he was not expected to do more than one dollar's worth of work that week. The immutable laws of chance demanded the sacrifice of one to the industry, who was capable of earning an average weekly wage of that class and grade in the industry in which he was employed, and it must pay the price.

C. S., sec. 6237, provides:

"Average weekly wages shall be computed in such a manner as is best calculated to give the average weekly earnings of the workman during the 12 months preceding his injury: *Provided,* that where by reason of the shortness of the time during which the workman has been in the employment, or the casual nature of the employment, it is impracticable to compute the rate of remuneration, regard may be had to the average weekly earnings which, during the 12 months previous to the injury, were being earned by a person in the same grade employed at the same work by the employer of the injured workman, or if there is no person so employed, by a person of the same grade employed in the same class of employment and in the same district.

"If a workman at the time of the injury is regularly employed in a higher grade of work than formerly during the year and with larger, regular wages, only such larger wages shall be taken into consideration in computing his average weekly wages."

The "average weekly wages" may be arrived at: (1) By proof of the average weekly wages of deceased, covering a period of 12 months preceding his death; (2) if, by reason of the shortness of his employment or its casual nature, it is impracticable to compute the rate of his earnings, then it may be shown what the average weekly wages were of other persons in the *same grade*, employed at the *same work*, during the 12 previous months, by the same employer; or, (3) if there is no person so employed, then the average weekly earnings for 12 months by a person in the same grade, employed in the same class of employment and in the same district.

[5–7] The reasonable construction of the provision of C. S., sec. 6228, that if, at the time of the injury, the employee received "wages of less than $6 per week, then the compensation shall not exceed the full amount of such wages," is that the section has in view weekly average wages in an industry wherein those wages, paid on a weekly basis, do not exceed $6. Thus, it would not be reasonable that, if an employee were capable of earning only, and were earning only $5 per week, in an employment that paid only $5 per week as a general average, upon his death the insurer should pay $6, or anything more than the average weekly wage of the employment.

There can be cited authorities limiting the compensation, upon injury of a person employed part time, to the amount earned by that part-time employee in that industry each week. (*Rice's Case,* 229 Mass. 325, Ann. Cas. 1918E, 1052, 118 N. E. 674; *King's Case,* 234 Mass. 137, 125 N. E. 153.)

It seems to us that the reasonable intention of the act as to the amount of compensation to be arrived at is directly indicated by the provisions of C. S., sec. 6237, as the average weekly wages computed in such manner as

best calculated to give the average weekly earnings of the workman, based on the wages paid in the industry for the kind of service he was rendering. (*Ronning v. Carter,* 185 Wis. 384, 200 N. W. 652; *Stevens v. Village of Nashwauk,* 161 Minn. 20, 200 N. W. 927; *Mackin v. Press Pub. Co.,* 209 App. Div. 252, 204 N. Y. Supp. 692.) Such construction is in harmony with the intent of the act, and with the decisions in those jurisdictions in which this is arrived at on an average weekly wage basis, rather than that the wages should be limited to the actual amount earned in a week by deceased in that industry, where an average weekly wage would undoubtedly exceed the $6 minimum provided by C. S., sec. 6228.

There is no finding of the board that "it is impracticable to compute the rate of remuneration," due to such shortness of time or casual nature of the employment, or that any regard was had to the provisions of C. S., sec. 6237, in the event of such impracticability, nor can we or do we desire to say from the record that it was impracticable, or that an extra driver should be as a matter of law in the opinion of the board declared to be of a grade or class equal or inferior to a regular driver. That involves a matter of fact for the determination of the board, which it has not determined.

The board was in error in its finding that the average weekly wages or earnings of the deceased, during the year next preceding the injury, were $35 per week. There is no proof of what his earnings were, with the exception that, for the time between December 16th and January 27th, his pay seems to have been evidenced by two $50 checks. Counsel for respondent are in error when they contend that the claimant pleaded, and appellants admitted, that her deceased husband was earning $150 per month. The pleading was that he earned, from December 16th to February 2d, $150, which was not proven. No successful inquiry was made apparently into the accounts of the predecessor of defendant employers to ascertain the average earnings or any earnings of deceased. Testimony of Pierce Dunne,

called for cross-examination by the claimant, disclosed that deceased worked during the year from February 2, 1923, to February 2, 1924, but the witness was unable to testify how much of the time during that year the deceased had driven the stage, but did say he had driven quite a bit that summer, "off and on, you know. He was away in Spokane for a while." There seems to be no basis for finding that his average weekly wages were $35 per week during the preceding year.

It might not be grievous error if the award were simply $12 per week to the widow, on a basis of the maximum under C. S., sec. 6228; but the award goes further, and in case of the death or marriage of the widow, allows the infant child 25 per cent of a weekly wage of $35, $8.75, until she arrives at the age of 18 years. This, a substantial part of the award which might become vital and material, is based upon the wrong premise. What limited accounts of the defendant employers are in evidence show that neither the deceased nor regular or special drivers worked from December 16th on every day, which would be necessary to show an earning of $35 a week at $5 a day. In fact, $35 a week was the maximum that could have been earned, and to average this for a year, the deceased would have had to work every day, which the proof discloses he did not nor did others, either extra or regular drivers.

[8] Appellants complain of the denial by the board of their motion to submit further testimony of one R. E. Stevenson. The affidavit of Stevenson, together with that of one of counsel for appellants, was submitted to the board, and in opposition to this affidavit, there were submitted those of the defendant Dunne and one D. Flynn, father of deceased. The board gave full consideration to the contents of these affidavits, and the showing of appellants of such diligence as they did show; and the board's record shows that after considering the motion and affidavits, the motion was denied. Although in one place, the record recites that the motion was dismissed, it is apparent that it was denied after consideration by the board. We cannot say that this

was an abuse of discretion by the board. It appears that this motion was made in behalf of the insurance company to impeach evidence of codefendants Carson and Dunne.

The judgment is reversed, and the cause remanded to the district court with directions to remit the cause to the Industrial Accident Board for it to take further proceedings to ascertain and determine the average weekly wages of deceased and enter an award accordingly. No costs allowed.

William A. Lee, C. J., and Wm. E. Lee, Budge and Givens, JJ., concur.

Petition for rehearing denied.