KINCAID v DETROIT MUTUAL INSURANCE COMPANY

Docket No. 81128. Argued April 5, 1988 (Calendar No. 5). Decided October 3, 1988.

Dennis Kincaid was awarded workers' compensation benefits, payable as the obligation of his employer, the Detroit Mutual Insurance Company, as a result of total and disabling injuries sustained in the course of his employment. It was additionally determined that he was entitled to differential benefits payable by the Second Injury Fund. The Workers' Compensation Appeal Board affirmed. Thereafter, 1980 PA 357, § 352(1), established a new entitlement to supplemental benefits intended as a cost-of-living adjustment of an eligible employee's basic compensation rate. Detroit Mutual determined that Kincaid was not entitled to the supplement. 1982 PA 32, amended § 352(1) to provide that the supplement be computed as a percentage of an employee's weekly compensation rate and amended § 352(5) to provide that the supplement be reduced by the amount of differential benefits being received by the employee. Detroit Mutual again determined that Kincaid was not entitled to the supplement. Kincaid contested the interpretation, and a hearing referee awarded supplemental benefits. The Workers' Compensation Appeal Board reversed, finding that the calculation of supplemental benefits was intended to be based exclusively upon the weekly compensation rate paid by the employer and not the sum total of the weekly compensation rate plus the differential benefits paid by the Second Injury Fund. The Court of Appeals, MICHAEL J. KELLY, P.J., and SULLIVAN and P. R. JOSLYN, JJ., reversed (Docket No. 89177). The defendant appeals, limited to the issue how the phrase "weekly compensation rate" of § 352(1) should be interpreted.

In an opinion by Justice GRIFFIN, joined by Chief Justice RILEY and Justices LEVIN and BRICKLEY, the Supreme Court held:

The phrase "weekly compensation rate" as used in § 352(1) of the Workers' Disability Compensation Act, which provides cost-

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 385 et seq.
See the Index to Annotations under Workers' Compensation.

of-living supplemental benefits, refers only to the amount of weekly compensation payable as the obligation of the employer; the words do not refer to or include the amount of differential benefits payable under § 521(2) as the obligation of the Second Injury Fund.

1. The enactment of § 352(1) of the workers' compensation act by 1980 PA 357, which established the supplement to weekly compensation, was intended to be an integral part of a comprehensive effort to reform the workers' compensation system in Michigan. Prior to its enactment, legislative concern for the effects of inflation principally focused upon the plight of the long-term disabled recipient who received no inflation adjustments, rather than upon the totally and permanently disabled recipient who received a differential benefit. 1980 PA 357, § 352(1) created for the first time a workers' compensation benefit wholly funded through taxes paid by the public at large to be administered by a state agency, the Compensation Supplement Fund. By contrast, differential benefits paid by the Second Injury Fund are funded through assessments against self-insured employers and workers' compensation insurance carriers.

2. The modification of the phrase "basic compensation rate" of § 352(1) by 1982 PA 32 to read "weekly compensation rate" was not made for the purpose of changing or broadening its meaning. The relationship of the phrase as modified with the other words in § 352(1) and language in other provisions of the act points to the conclusion that the modification was intended to clarify, rather than expand, the meaning, to refer to compensation which is the obligation of the employer. The change from "basic compensation" in 1980 PA 357 to "weekly compensation" in 1982 PA 32 was made merely for the purpose of conforming and making more consistent the wording within § 352(1) and in its relation to other sections of the act. It was employed as a shorthand abbreviation of the employer's obligation to pay disability as spelled out in detail in § 351.

Reversed.

Justice ARCHER, joined by Justice CAVANAGH, dissenting, stated that the phrase "weekly compensation rate" as used in § 352(1) of the workers' compensation act which provides cost-of-living supplemental benefits refers to the actual rate of compensation received by an employee rather than only that portion of the amount of weekly compensation payable as the obligation of the employer. When the statute is viewed as a whole, it is apparent that a broader meaning was intended by the substitution of "weekly" for "basic." Such a construction ensures that an injured worker will receive adequate benefits,

meaningfully supplemented to compensate for inflation and its effect on purchasing power.

Justice BOYLE concurred only in the result suggested by Justice ARCHER.

160 Mich App 580; 408 NW2d 820 (1987) reversed.

WORKERS' COMPENSATION — SUPPLEMENTAL BENEFITS — DIFFERENTIAL
    BENEFITS — WEEKLY COMPENSATION RATE — WORDS AND
    PHRASES.
    The phrase "weekly compensation rate" as used in § 352(1) of the
    Workers' Disability Compensation Act, which provides cost-of-
    living supplemental benefits, refers only to the amount of
    weekly compensation payable as the obligation of the employer;
    the words do not refer to or include the amount of differential
    benefits payable under § 521(2) as the obligation of the Second
    Injury Fund (MCL 418.352[1], 418.521[2]; MSA 17.237[352][1],
    17.237[521][2]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Barbara F. Grossman* and *George L. Downing*) for the plaintiff.

*John P. Baril* for defendants Detroit Mutual Insurance Company and Liberty Mutual Insurance Company.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Ray W. Cardew, Jr.,* Assistant Attorney General, for defendant Compensation Supplement Fund.

GRIFFIN, J. In this case we are asked to determine whether the phrase "weekly compensation rate" in § 352(1)[1] of the Workers' Disability Compensation Act,[2] as amended, refers (1) to the amount of weekly compensation payable as the obligation of the employer under § 351(1) to a disabled employee, or (2) to the total of such weekly compensation payable by the employer

[1] MCL 418.352(1); MSA 17.237(352)(1).
[2] MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

*plus* the amount of "differential" benefits payable
weekly by the Second Injury Fund under § 521(2),[3]
where an employee is totally and permanently
disabled. We hold that the phrase refers only to
the amount of the employer's obligation, and thus
we reverse the decision of the Court of Appeals.

I

Dennis Kincaid was injured on January 12,
1970, in the course of his employment with the
Detroit Mutual Insurance Company. On December
31, 1975, a hearing referee found Kincaid to be
totally and permanently disabled. In addition to
compensation payable weekly as the obligation of
his employer pursuant to § 351(1), it was deter-
mined that Kincaid was entitled to "differential"
benefits payable weekly as the obligation of the
Second Injury Fund pursuant to § 521(2). Both
awards were affirmed by the Workers' Compensa-
tion Appeal Board, and no appeal was taken.

As of January 1, 1982, Kincaid was receiving
compensation from his employer in the amount of
$80 a week, and a "differential" benefit from the
Second Injury Fund in the amount of $86.67 a
week. That was the effective date of § 352(1) which,
as part of 1980 PA 357, established a new entitle-
ment to "supplemental" benefits, intended as a
cost-of-living adjustment for eligible employees
with injury dates between September 1, 1965, and
December 31, 1979.

In accordance with an interpretation of § 352(1)
issued through the Compensation Supplement
Fund (CSF) by the Director of the Bureau of Work-
ers' Disability Compensation, Kincaid's employer
determined that Kincaid was not entitled to a

---

[3] MCL 418.521(2); MSA 17.237(521)(2).

supplement. Section 352(1),[4] as amended by 1982 PA 32, provides that "[t]he supplement shall be computed as a percentage of the *weekly compensation rate*" which the employee is receiving on January 1, 1982. Furthermore, § 352(5) provides that "the supplement [shall be] reduced by the amount of the differential payments" which the employee is receiving.

The parties agree that in calculating the amount of an employee's "supplemental" benefit, the inflation factor to be applied under the statute in the case of this employee injured in the year 1970 is seventy-one percent (0.71). However, there is disagreement as to how the calculation should be made.

In accordance with the CSF's interpretation, the employer calculated Kincaid's supplement by multiplying the amount of his weekly compensation payable by the employer ($80) by the inflation factor (0.71), which produced a preliminary supplement of $57 per week. However, when Kincaid's weekly differential benefit of ($86.67) was then subtracted from $57, as required by § 352(5), the negative result indicated that Kincaid was not entitled to a supplement.

Kincaid filed a petition, contesting the interpretation. He argued that the inflation factor (0.71) should be applied to $166.67, the total of the weekly amount paid by his employer ($80) plus the differential benefit paid by the Second Injury Fund ($86.67). From that product, $118, he would then deduct $86.67, his differential benefit, resulting in a supplemental benefit of $31.33 per week. On the basis of Kincaid's interpretation of the phrase "weekly compensation rate," he would be entitled

[4] 1982 PA 32 amended the phrase "basic compensation rate" in the third sentence of § 352(1) to read "weekly compensation rate." MCL 418.352(1); MSA 17.237(352)(1).

to receive $80 from his employer, $86.67 from the Second Injury Fund, and $31.33 from the CSF, or a total of $198 per week.[5]

In a decision mailed July 12, 1983, a hearing referee agreed with the plaintiff's interpretation. However, upon appeal, the WCAB reversed, stating:

> [W]e . . . find it was the intent of the Legislature in enacting Section 352(1) that the calculation of supplemental benefits should be based *exclusively* upon the *weekly compensation rate* paid by the employer, in this case, *and not* the sum total of the weekly compensation rate *plus* the differential benefits paid by the Second Injury Fund. [Emphasis in original.]

Thereafter, the Court of Appeals reversed the decision of the WCAB. 160 Mich App 580; 408 NW2d 820 (1987). We granted leave to appeal limited to the issue how the phrase "weekly compensation rate" in § 352(1) should be interpreted.

II

The dispute in this appeal centers on the question: What was the purpose and intent of the Legislature when, by adopting 1982 PA 32, it modified the phrase, "basic compensation rate" as it had appeared in § 352(1) of 1980 PA 357, to read "weekly compensation rate"?

Plaintiff concedes that the phrase, "basic compensation rate," in the earlier version had referred only to that compensation which is the obligation of the employer. However, he argues that by amending the phrase, the Legislature manifested

---

[5] Kincaid died on February 8, 1983, and his widow, Violet Kincaid, was substituted as plaintiff. Accordingly, insofar as the plaintiff in this case is concerned, our decision will determine the extent of Kincaid's entitlement to supplemental benefits between January 1, 1982, and February 8, 1983.

an intent to broaden its meaning so as to include the differential benefits he also received from the SIF.

On the other hand, the CSF contends that several amendments of § 352(1) made by 1982 PA 32, including the modification of "basic compensation rate" to "weekly compensation rate" were adopted for clarification purposes only, and that there was no intent on the part of the Legislature to change the meaning of § 352(1) in any respect. The CSF asserts that in the context of § 352(1) and the workers' compensation act as a whole the phrase "weekly compensation rate" is restrictive rather than expansive.

Agreeing with the position of the plaintiff, the Court of Appeals held:

> We hold that the differential benefits are not to be excluded from the *calculation* of the supplement, but are to be subtracted from the supplement *after* it has been calculated and before it is paid. We rely heavily on the amending language of § 352 which excluded the more narrow term "basic compensation" in favor of the broader term "weekly compensation." We find that the statute evidences an intent to include differential benefits within the meaning of weekly compensation. [160 Mich App 586-587. Emphasis in original.]

As we said in *In re Petition of State Hwy Comm*, 383 Mich 709, 714-715; 178 NW2d 923 (1970):

> The fundamental rule of construction of statutes is to ascertain and give effect to the intention of the Legislature; courts are bound, whenever possible, so to construe statutes as to give them validity and a reasonable construction; seeming inconsistencies in the various provisions of a statue should be reconciled, if possible, so as to arrive at a meaning which gives effect to all parts of the

statute; a construction leading to an absurd conse-
quence should be avoided.

Since we find the phrase "weekly compensation
rate" on its face to be ambiguous, it is appropriate
that we look beyond the statute to its history and
the circumstances surrounding its enactment.
*Lakehead Pipe Line Co, Inc v Dehn,* 340 Mich 25;
64 NW2d 903 (1954).

### III

Enactment of § 352(1) which established the
"supplement" to weekly compensation was not an
isolated occurrence. Rather, it was an integral part
of a comprehensive effort to "reform" the workers'
compensation system in Michigan. In a report
delivered in 1975 to Governor Milliken, a Gover-
nor's Workmen's Compensation Advisory Commis-
sion, chaired by Professor Theodore St. Antoine,
reviewed a number of problems and abuses relat-
ing to the system. The report included the follow-
ing:

> Finally, there is the question of inflation. The
> continued erosion of the purchasing power of fixed
> benefits has made a mockery of prior efforts to
> maintain the dignity of the disabled worker. Even
> though fault need not be attributed to any part of
> the compensation system, the system has, nonethe-
> less, failed to fulfill its promise to workers whose
> disabilities have continued from years ago to the
> present. So too, unless basic changes are enacted
> or unless inflation is miraculously halted, the sys-
> tem will fail to fulfill its promise to workers dis-
> abled today whose disabilities continue forward.
>
> *       *       *
>
> The magnitude of inflation in the future cannot
> be accurately forecast, but it is possible to identify
> potential sources of the additional funds to main-

tain the purchasing power of benefits. The three
most likely sources are the *general fund, each
particular carrier,* or *carriers in general.* [Emphasis supplied.]

A study by Dr. H. Allan Hunt, referred to by the
WCAB in its opinion, included this historical perspective:

During inflationary times like the present, the
passage of just a few years with double-digit inflation can have a devastating impact on the standard of living of a disabled worker. This concern is
reflected in the following statement by William
Marshall, President of the Michigan AFL-CIO,
concerning the Michigan workers' compensation
system:
"Perhaps the most inequitable part of our present law insofar as benefits is [sic] concerned, is the
lack of a cost-of-living provision for injured workers. In this age where inflation is a fact of life, our
current law fixes benefits as of the date of injury
and condemns the disabled to an erosion of their
purchasing power and in the final result to welfare."

Hunt, *Inflation Protection for Workers' Compensation Claimants in Michigan* (Kalamazoo: W. E.
Upjohn Institute for Employment Research 1981),
p 1.

However, as the WCAB opinion makes clear, the
concern prior to 1980 PA 357 about the effects of
inflation focused principally upon the plight of the
long-term totally disabled who received no inflation adjustments, rather than the totally and permanently disabled who, since 1969, had been receiving a "differential" benefit as an inflation offset. As Dr. Hunt pointed out, by providing "differential" benefits to the totally and permanently
disabled, Michigan was one of a few states then

providing any inflation relief to workers' compensation recipients. However, Dr. Hunt concluded that this was not enough since "[t]he result is that a total of less than 1,500 of the roughly 25,000 cases in active payment status were receiving such inflation adjustment payments as of late 1979." *Hunt, supra,* p 4.

On December 30, 1980, a breakthrough in the reform effort occurred when the Legislature passed, and the Governor signed 1980 PA 357, the first in a series of public acts which have revised the Workers' Disability Compensation Act. The 1980 reform act addressed a number of problems and concerns; however, one of the most significant provisions was § 352(1) providing for the "supplemental" benefit.

The legislation also created the Compensation Supplement Fund, an agency of the State of Michigan funded by legislative appropriations,[6] which bears the ultimate obligation for payment of the "supplemental" benefit. As the CSF points out, this step represented a sharp change in public policy because prior thereto, from the inception of the system, the burden of financing workers' compensation benefits had been placed by the Legislature

---

[6] MCL 418.391; MSA 17.237(391) provides in part:

(1) The compensation supplement fund is created as a separate fund in the state treasury. The fund shall be administered by the state treasurer pursuant to this section. The legislature shall appropriate to the compensation supplement fund from the general fund the amounts necessary to meet the obligations of the compensation supplement fund under section 352, and the administrative costs incurred by the bureau under this section.

(2) The director shall promulgate rules pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws, that prescribe the conditions under which the money in the compensation supplement fund shall be expended pursuant to section 352 and this section.

upon the employer or the industry which occasioned the employee's injury. See *Andrejwski v Wolverine Coal Co,* 182 Mich 298; 148 NW 684 (1914). Accordingly, enactment of § 352(1) created for the first time a workers' compensation benefit that is wholly funded through taxes paid by the public at large.

By contrast, it may be noted that while the Second Injury Fund is also a state agency, its obligation to pay "differential" benefits to totally and permanently disabled employees[7] is funded through assessments against self-insured employers and workers' compensation insurance carriers.[8]

In the light of that background, we now examine more closely the Legislature's use of the words, "weekly compensation rate," in the context of § 352(1) and in the workers' compensation act as a whole.

IV

As amended by 1982 PA 32, § 352(1) provides:

Beginning January 1, 1982, an employee receiving or entitled to receive benefits equal to the maximum payable to that employee under *section 351* or the dependent of a deceased employee receiving or entitled to receive benefits under *section 321* whose benefits are based on a date of personal injury between September 1, 1965, and December 31, 1979, shall be entitled to a *supplement to weekly compensation.* The supplement shall be computed using the total annual percentage change in the state average weekly wage, rounded to the nearest 1/10 of 1%, as determined

---

[7] MCL 418.521(2); MSA 17.237(521)(2).

[8] MCL 418.551; MSA 17.237(551).

under section 355.[9] The supplement shall be computed as a percentage of the *weekly compensation rate* which the employee or the dependent of a deceased employee is receiving or is entitled to receive on January 1, 1982 had the employee been receiving benefits at that time, rounded to the nearest dollar. The supplement shall not exceed 5% compounded for each calendar year in the adjustment period. The percentage change for purposes of the adjustment shall be computed from the base year through December 31, 1981. A supplement shall not be paid retroactively for any period of disability before January 1, 1982. [Emphasis added.]

As the text makes clear, § 352(1) limits its application to those employees who receive benefits pursuant to §§ 321 and 351.

Section 321[10] provides benefits for the depen-

[9] MCL 418.355; MSA 17.237(355) provides:

(1) The maximum weekly rate shall be adjusted once each year in accordance with the increase or decrease in the average weekly wage in covered employment, as determined by the Michigan employment security commission.

(2) Effective January 1, 1982, and each January 1 thereafter, the maximum weekly rate of compensation for injuries occurring within that year shall be established as 90% of the state average weekly wage as of the prior June 30, adjusted to the next higher multiple of $1.00.

(3) For the purpose of computing the supplemental benefit under section 352, the state average weekly wage for any injury year shall be the average weekly wage in covered employment determined by the Michigan employment security commission for the 12 months ending June 30 of the preceding year.

[10] MCL 418.321; MSA 17.237(321) provides:

If death results from the personal injury of an employee, the *employer* shall pay, or cause to be paid, subject to section 375, in 1 of the methods provided in this section, to the dependents of the employee who were wholly dependent upon the employee's earnings for support at the time of the injury, a *weekly payment* equal to 80% of the employee's after-tax average weekly wage, subject to the maximum and minimum rates of

dents of a deceased employee. While the instant case does not relate to such benefits, a review of § 321 is nevertheless useful. It demonstrates on its face that the use in § 321 of the term "weekly compensation," as well as "weekly payments," refers solely to compensation for which the employer is obligated. Accordingly, the wording and obvious meaning of § 321 provide no support for plaintiff's argument that "weekly compensation rate" includes differential benefits, an obligation of the SIF.

We turn now to § 351(1) which provides:

> While the incapacity for work resulting from a personal injury is total, the *employer* shall pay, or cause to be paid as provided in this section, to the injured employee, *a weekly compensation* of 80% of the employee's after-tax average weekly wage, but not more than the maximum weekly rate of compensation, as determined under section 355. Compensation shall be paid for the duration of the disability. The conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time. [MCL 418.351(1); MSA 17.237(351)(1). Emphasis supplied.]

compensation under this act, for a period of 500 weeks from the date of death. If at the expiration of the 500-week period any such wholly or partially dependent person is less than 21 years of age, a hearing referee or worker's compensation magistrate, as applicable, may order the *employer* to continue to pay the *weekly compensation* or some portion thereof until such wholly or partially dependent person reaches the age of 21. If the employee leaves dependents only partially dependent upon his or her earnings for support at the time of injury, the *weekly compensation* to be paid shall be equal to the same proportion of the *weekly payments* for the benefit of persons wholly dependent as 80% of the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of injury. [Emphasis added.]

While § 351(1) applies to all eligible employees whose incapacity for work is total, it should be kept in mind that some are totally incapacitated for a period of time, while others are totally and *permanently* disabled. It is clear that the "weekly compensation" referred to in § 351(1) is the basic or general compensation that is the obligation of the employer and which is received by all eligible employees who are totally incapacitated. As already indicated, a totally and permanently disabled employee, such as the plaintiff, may also receive "differential" benefits. However, his entitlement to "differential" benefits is not based on § 351; rather, it is based on § 521, to which no reference is made in § 351.

Although the words *"basic* compensation rate," in § 352(1), as it originally appeared in 1980 PA 357, were later modified by 1982 PA 32 to read *"weekly* compensation rate," we do not find, as plaintiff contends, that the modification was made for the purpose of changing or broadening the meaning of the term. Furthermore, plaintiff has been able to point to no legislative history which would support such an interpretation.

On the other hand, we believe the relationship of those words to other words within § 352(1), as well as to language used in other provisions of the act, points to the conclusion that the Legislature intended to clarify, rather than to expand, the meaning of the words.

As the CSF has pointed out, the term, *"basic* compensation," in the 1980 version of § 352(1), was a new term without definition which appeared nowhere else in the act. If the term had not been modified, there would have been a question whether "basic compensation" in the third sentence of § 352(1) referred to "weekly compensa-

tion" as used in the first sentence of the same section.

Furthermore, a review of the act reveals that the term "weekly compensation" and slight variations thereof are used in various sections throughout the act to refer to that compensation which is the obligation of the employer.[11] It is our conclusion that the words "basic compensation" were changed to "weekly compensation" merely for the purpose of conforming and making more consistent the wording within § 352(1) and in its relation to other sections of the act.[12]

After a careful examination of § 352(1) as well as §§ 321 and 351, we conclude that the WCAB was correct when it said:

> The Legislature's use [in § 352(1)] of the term "weekly compensation rate" was employed as a shorthand abbreviation of the *employer's* obligation as spelled out in detail in Section 351 to pay disability and that if it had intended to include *differential benefits* it had the opportunity to use a much broader term when writing the statute. [Emphasis in original.]

We also take note of the fact that 1982 PA 32 made several other changes in § 352(1) which were clarifying in nature. For example, by inserting the words "equal to the maximum payable to that employee" in the first sentence, it appears that the Legislature sought to reinforce its intent that the new "supplemental" benefit would be paid only to employees receiving benefits under §§ 321 and 351. Furthermore, the penultimate sentence of § 352(1)

---

[11] For example, see §§ 301(5)(b); 301(10); 321; 335; 351(1); 361(1); 371(1), (2); 372(1)(a), (b).

[12] See *Maglothin v Tryco Steel Corp,* 137 Mich App 640; 357 NW2d 914 (1984), wherein the amount of the supplemental benefit available under § 352(1) was determined by the parties on the basis of the amount of compensation payable by the employer.

was changed to delete "to 1982" and insert "through December 31, 1981." While the director might have administered the provision in the same way without such an amendment, it served to provide clarification.

Plaintiff cites *Van Dorpel v Haven-Busch Co,* 350 Mich 135; 85 NW2d 97 (1957), for the proposition that doubt as to the construction of a provision in the workers' compensation act should be resolved in favor of the worker. However, that proposition is counterbalanced in this case by the maxim that statutes granting the power to expend public funds are to be narrowly construed. 3 Sands, Sutherland Statutory Construction (4th ed), § 65.02, p 222. Furthermore, such doubt as may have existed is resolved upon a close examination of the context in which the phrase "weekly compensation rate" is used.

In the light of those considerations as well as the legislative history, we conclude that when it enacted § 352(1), the Legislature's principal purpose was to provide the supplemental benefit as inflation relief for the long-term totally disabled who previously had received no inflation adjustments. However, the Legislature also provided that those totally and permanently disabled who previously had been receiving inflation adjustments in the form of differential benefits would receive the supplement if, and only to the extent that, it exceeded the differential benefit in a particular case.

V

Accordingly, we hold that the words, "weekly compensation rate" in the third sentence of § 352(1), MCL 418.352(1); MSA 17.237(352)(1), refer only to the amount of weekly compensation pay-

able as the obligation of the employer, and the words do not refer to or include the amount of differential benefits payable pursuant to § 521, MCL 418.521; MSA 17.237(521), as the obligation of the Second Injury Fund.

We reverse the decision of the Court of Appeals and reinstate the order of the Workers' Compensation Appeal Board.

RILEY, C.J., and LEVIN and BRICKLEY, JJ., concurred with GRIFFIN, J.

ARCHER, J. (*dissenting*). The majority holds that the phrase "weekly compensation rate" in § 352(1)[1] of the Workers' Disability Compensation Act, refers only to that portion of the amount of weekly compensation payable as the obligation of the employer under § 351(1).[2] I dissent from this holding and would affirm the decision of the Court of Appeals, which held that the phrase "weekly compensation rate" refers to the actual rate of compensation received by an employee.[3]

I

Pursuant to § 352 of the Workers' Disability Compensation Act, an employee who is totally disabled or who is permanently and totally disabled is entitled to a supplement to his weekly compensation if the disabling injury occurred between September 1, 1965, and December 31, 1979. The relevant language of § 352 provides:

The supplement shall be computed as a percentage of the *weekly compensation rate* which the

[1] MCL 418.352(1); MSA 17.237(352)(1).

[2] MCL 418.351(1); MSA 17.237(351)(1).

[3] *Kincaid v Detroit Mutual Ins Co,* 160 Mich App 580; 408 NW2d 820 (1987).

employee or the dependent of a deceased employee is receiving or is entitled to receive on January 1, 1982 had the employee been receiving benefits at that time, rounded to the nearest dollar. [MCL 418.352(1); MSA 17.237(352)(1).]

The phrase "weekly compensation rate" appears in § 352(1) as enacted by 1982 PA 32, 1982 PA 282, and 1984 PA 46. As originally enacted by 1980 PA 357, § 352(1) contained the phrase "basic compensation rate." The Court of Appeals relied heavily on this change of phraseology in holding that the Legislature intended to expand the scope of benefits to be included in computation of the supplement.[4] Although the majority acknowledges that the Legislature effected this change in the statute, it states:

> [W]e do not find, as plaintiff contends, that the modification was made for the purpose of changing or broadening the meaning of the term. [*Ante,* p 439.]

This finding by the majority directly contravenes an elementary principle of statutory construction. The pertinent rule has been stated as follows:

> The courts have declared that the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights. [1A Sands, Sutherland Statutory Construction (4th ed), § 22.30, p 265.]

Accord *Sam v Balardo,* 411 Mich 405; 308 NW2d

---

[4] *Id.* at 587.

142 (1981); *Detroit Edison Co v Janosz,* 350 Mich 606, 613; 87 NW2d 126 (1957).

In *Lawrence Baking Co v Unemployment Compensation Comm,* 308 Mich 198, 205; 13 NW2d 260 (1944), the Court stated:

> "It will be presumed that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment. So a change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended."

The majority fails to acknowledge this rule and cites insufficient evidence to rebut the presumption that the Legislature intended to make a substantive change when it amended the statute.

The majority attempts to justify its nullification of clear legislative intent by stating:

> [W]e believe the relationship of those words to other words within § 352(1), as well as to language used in other provisions of the act, points to the conclusion that the Legislature intended to clarify, rather than to expand, the meaning of the words.
>
> As the CSF has pointed out, the term, *"basic compensation,"* in the 1980 version of § 352(1), was a new term without definition which appeared nowhere else in the act. If the term had not been modified, there would have been a question whether "basic compensation" in the third sentence of § 352(1) referred to "weekly compensation" as used in the first sentence of the same section. [*Ante,* pp 439-440.]

This argument assumes that the term "weekly compensation" in the first sentence of § 352(1) refers only to that portion of the employee's

weekly benefits payable as the obligation of the employer. I disagree with this premise. There is nothing in § 352(1) that requires such a restrictive construction of the phrase "weekly compensation." A more reasonable construction is that the Legislature intended to change the more restrictive phrase "basic compensation," which would refer only to general disability benefits, to the broader term "weekly compensation rate" in order to ensure that the employee would receive a meaningful supplement to his prior total weekly benefits.

When the statute as a whole is reviewed, there are several instances where the phrases "weekly compensation," "weekly compensation rate," "weekly payments," and "weekly benefits" are used interchangeably to refer either to the obligation of the employer or to the total package of benefits to be received by an injured worker in a given week.[5] It follows that the Legislature intended to use the *broader* meaning of the term when it substituted the word "weekly" for the word "basic" in legislation designed to provide a supplement to the inflation-ravaged benefits relied upon by permanently and totally disabled workers.

A second elementary principle of statutory construction absent from the majority's analysis is the oft-stated maxim: *Expressio unius est exclusio alterius.* If the Legislature had intended to restrict the operation of § 352(1) to general disability benefits, it would have expressly said so. In drafting § 352, the Legislature expressly excluded recipients of certain types of benefits from eligibility for the supplement. For example, § 352(9) provides:

> This section does not apply to an employee

---

[5] See §§ 301(5)(b), 301(10), 321, 335, 351(1), (2), and (3), 353(2), 354(1), 357(1) and (2), 358, 360(1), 361(1), 371(2), 372(1)(a) and (b), 375(1), 801(2) and (5).

receiving benefits under § 361(1).[6] [MCL 418.352(9); MSA 17.237(352)(9).]

In contrast, the Legislature omitted differential benefits payable pursuant to § 521(2)[7] from the enumerated exceptions to application of the compensation supplement. Accordingly, the stated maxim applies, thereby precluding an inference of legislative intent to prohibit addition of differential benefits prior to application of the appropriate multiplier.

## II

The majority indicates that it is attempting to give effect to legislative purpose in light of economic considerations as well as "legislative history." *Ante,* p 441. In making this attempt, the majority gives short shrift to the rule that ambiguities in the statute are to be resolved in favor of an injured worker. This fundamental tenet of statutory construction becomes even more crucial in the analysis of legislative provisions for permanently and totally disabled workers. In *King v Second Injury Fund,* 382 Mich 480, 490; 170 NW2d 1 (1969), the Court adopted this eloquent statement of the public policy of Michigan in granting relief to the plaintiff:

> "The Michigan legislature fully intended that the very few people who meet the restrictive definitions of 'total and permanent disability' needed to be placed in a very special class and provided with special attention. It is recognized that these people will be disabled for the remainder of their

---

[6] MCL 418.361(1); MSA 17.237(361)(1). This section provides a weekly benefit to partially disabled workers to partially compensate for the difference between an injured employee's earnings before and after the injury.

[7] MCL 418.521(2); MSA 17.237(521)(2).

lives and that the wage structure and cost of
living, with the years passing, is rising. It is recog-
nized that these people will need special at-
tention because they cannot earn a living and
must hire others to perform household tasks such
as cutting their grass, shoveling their snow, and
other tasks which a person not so seriously crip-
pled would be able to perform without hired help.
To limit such a person to two-thirds of his wage
for the rest of his life would mean that he would
be getting an extremely small and inadequate
amount when, 20 years later, the wage structure
and cost of living has risen to an alarming degree
and the purchasing power of the dollar has
dropped by over one half."

In answer to these considerations advanced by
the plaintiff, today's majority argues that "[this]
proposition is counterbalanced in this case by the
maxim that statutes granting the power to expend
public funds are to be narrowly construed." *Ante,*
p 441.

This argument fails to consider that injured
workers who lose purchasing power due to infla-
tion will often seek some other form of public
assistance. One commentator effectively observed:

[Society] can put [the injured worker] on county
relief, or some other form of direct handout.
This . . . is a poor solution in at least two ways: It
stigmatizes the man as a pauper, and it places the
cost on the political or geographical subdivision
where he happens to have his residence, although
that subdivision had no connection with the in-
jury. [1 Larson, Workmen's Compensation Law,
§ 2.20, p 6.]

Although the compensation supplement fund is
derived from public funds, it is expressly intended
by the Legislature to compensate injured workers.
Other types of public assistance are not so desig-

nated and consequently bear the stigma that society often places on those receiving general assistance.

### III

For these reasons, I dissent from the majority holding. I would affirm the decision of the Court of Appeals, which upheld the right of injured workers to receive adequate workers' disability compensation benefits that are meaningfully supplemented to compensate for inflation and its concomitant devastating effect on purchasing power.

Cavanagh, J., concurred with Archer, J.

Boyle, J., concurred only in the result suggested by Archer, J.